**IT IS ORDERED as set forth below:**



**Date: January 28, 2016**

_____

**Mary Grace Diehl**
**U.S. Bankruptcy Court Judge**

_____

```
                  UNITED STATES BANKRUPTCY COURT
                  NORTHERN DISTRICT OF GEORGIA
                           ROME DIVISION

In re:                              :    Chapter 11 – Judge Diehl
                                    :
EDWARD BYRON SLAUGHTER;             :    Case No. 13-42906
E. BYRON SLAUGHTER, LLC;            :    Case No. 13-42907
APEX LOCATORS, LLC;                 :    Case No. 13-42908
CHAPEL HEIGHTS, LLC; and            :    Case No. 13-42909
ROLLING HILLS PLAZA, LLC;           :    Case No. 13-42910
                                    :
       Debtors.                     :    Jointly Administered Under
                                    :    Case No. 13-42906
                                    :
_____ :
```

ORDER CONFIRMING EDWARD BYRON SLAUGHTER'S
FIRST AMENDED PLAN OF REORGANIZATION

Edward Byron Slaughter (the "Debtor") filed his *Plan of Reorganization* on August 4, 2015 [Doc. No. 330], and his *First Amended Plan of Reorganization* on December 1, 2015 [Doc. No. 387]. PNC Bank, National Association ("PNC") filed its *Objection to the First Amended Plans of Liquidation for Apex Locators, LLC and Rolling Hills Plaza, LLC and the First Amended Plan of Reorganization for Edward Byron Slaughter* on January 7, 2016 [Doc. No. 422] ("PNC's Objection").  PNC also cast Class 1 and Class 8 Ballots in rejection of the *First Amended Plan of Reorganization.*  The Court held a hearing (the "Hearing") upon

1

due notice on January 14, 2016 to consider confirmation of the *First Amended Plan of Reorganization*. The following parties made an appearance at the Hearing: Paul Reece Marr, Esq. as counsel for the Debtors; Martin P. Ochs, Esq. as counsel for the United States Trustee; Ron C. Bingham, II, Esq., as counsel for PNC; and David W. Cranshaw, Esq., as counsel 2010-1 CRE Venture, LLC.  The Debtor's counsel announced at the Hearing that the Debtor agreed to clarify and amend the *First Amended Plan of Reorganization* as more particularly set forth hereinbelow in order to address PNC's Objection.  In return, PNC agreed to withdraw PNC's Objection and to recast its Ballots in acceptance of the *First Amended Plan of Reorganization*.  Additionally, Debtor's counsel agreed with counsel for Greater Community Bank fdba Greater Rome Bank ("GCB") to amend the *First Amended Plan of Reorganization* as more particularly set forth hereinbelow in order to address certain issues raised by GCB.  In return, GCB agreed to cast Class 4 and Class 8 Ballots in acceptance of the *First Amended Plan of Reorganization.*

THEREFORE, IT HAVING BEEN DETERMINED AFTER A HEARING ON NOTICE THAT:

(1)  The *First Amended Plan of Reorganization*, as modified and amended by the terms of this Order (the "Plan"), does not materially and adversely affect the rights of any party in interest and therefore does not require any further disclosure or solicitation;

(2)  The Plan has been accepted in writing by the creditors and parties in interest whose acceptance is required by law;

(3)  The provisions of Chapter 11 of the Bankruptcy Code have been complied with, and the Plan has been proposed in good faith and not by any means forbidden by law;

(4)  Each holder of a claim or interest either has accepted the Plan or will receive or retain under the Plan property of a value, as of the Effective Date of the Plan, that is not less

than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date;

(5) All payments made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan or by any other person for services or for costs and expenses in, or in connection with, the Plan and incident to the case have been fully disclosed to the Court and are reasonable or, if to be fixed after confirmation of the Plan, will be subject to the approval of the Court;

(6) The identity of any insider that will be employed or retained by Debtor or by any affiliate of Debtor, and his or her compensation, have been fully disclosed;

(7) The Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under the Plan and has not accepted the Plan;

(8) The Plan provides that the holders of secured claims shall retain the liens securing such claims to the extent of the allowed amount of such claims, and that each holder of a secured claim shall receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in Debtor's interest in such property;

(9) The Plan is in the best interests of creditors and parties in interest herein;

(10) Confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor except as liquidation or reorganization is proposed in the Plan; and

(11) All fees payable under 28 U.S.C. § 1930 have been paid, or the Plan provides for the payment of such fees on the Effective Date of the Plan.

ACORDINGLY, IT IS HEREBY ORDERED that the following modifications are hereby made a part of this Order, and the *First Amended Plan of Reorganization* is amended and modified accordingly pursuant to 11 U.S.C. § 1127:

1. Class 1 appearing in Article IV, pages 4, 5, 6, 7, and 8 of the *First Amended Plan of Reorganization* is hereby deleted in its entirety and the following is hereby substituted in lieu thereof:

> **Class 1.  The claims of PNC Bank, N.A., to the extent allowed as a secured claim under § 506 of the Code.** Impaired.  As reflected in Proof of Claim No. 5 filed on August 29, 2014, PNC Bank, N.A. ("PNC") asserts a claim against Debtor and affiliated debtors Apex Locators, LLC and Rolling Hills, LLC as of the Petition Date in the amount of $1,333,845.96 ($1,018,485.58 principal + $44,760.38 accrued interest + $160,165.00 statutory attorney fees + $110,435.00 other fees, expenses, and charges) secured by the following pieces of real estate (together, the "PNC Real Estate Collateral") and the cash collateral generated  therefrom, the Debtor asserting that the PNC Real Estate Collateral having the following  fair market values as assessed by the relevant governmental tax assessors' offices:
>
> (a)  16 Rolling Hills Road, Cedartown, Georgia 30124 owned by the Debtor, being a 4,059 square foot strip shopping center having an estimated fair value of $128,728.00;
>
> (b)  U.S. Highway 411, Leesburg, Alabama 35983 / Lake Weiss lot owned by Slaughter, being an undeveloped parcel having an estimated fair market value of $50,000.00;

4

    (c)  2135 Belleview Road, Rockmart, Georgia 30153 owned by Slaughter, being a residential real estate unit having an estimated fair market value of $121,825.00;

    (d)  118 Treat Mountain Road, Cedartown, Georgia 30125 owned by Slaughter, being a residential real estate unit having an estimated fair market value of $98,309.00;

    (e)  1029 Judkin Mill Road, Cedartown, Georgia 30125 owned by Slaughter, being an abandoned amusement park having an estimated fair market value of $98,011.00;

    (f)  1335 South Main Street, Cedartown, Georgia 30125 owned by Slaughter, being an office/warehouse building having an estimated fair market value of $375,273.00;

    (g)  County Road 531 and 462 (a/k/a County Road 530), Centre, Alabama 35960 owned by Apex, being two mini-storage buildings having an estimated aggregate fair market value of $125,000.00;

    (h)  5979 U.S. Highway 27 South, Lindale, Georgia 30147 owned by Apex, being a former church building that also has six (6) mobile homes situated upon the property having an estimated aggregate fair market value of $132,400.00; and

    (i)  425 South College Street, Cedartown, Georgia 30125 owned by Apex, being a commercial building having an estimated aggregate fair market value of $145,398.00.

The aggregate estimated fair market value of the PNC Real Estate Collateral is $1,332,864.00. The aggregate estimated fair market value of those pieces of PNC Real Estate Collateral that are titled in the name of the Debtor is $743,418.00. It does not appear that there is any equity in the PNC Real Estate Collateral above and beyond PNC's claim. Notwithstanding anything in the Plan to the contrary, confirmation of the Plan shall not establish the value of any of the PNC Real Estate.

The Debtor's Plan, as well as Apex's and Rolling Hills' Plans of Liquidation, provide as follows:

    (a) Upon the Effective Date of the Plan, the automatic stay

5

of 11 U.S.C. § 362 shall be modified to allow the Debtor and PNC to employ an auctioneer and to auction the PNC Real Estate Collateral.  The auction and sale of the PNC Real Estate Collateral is to be conducted, pursuant to 11 U.S.C. §363, free and clear of all liens, claims, encumbrances and interests, with all liens, claims, encumbrances and interests to attach to the proceeds of the sale (the "Sales Proceeds") in the same amount, validity and priority as they may have attached to the PNC Real Estate Collateral pre-Petition;

(b)   The Debtor will cooperate with the auctioneer, such auctioneer to be retained and compensated by PNC in its sole discretion during the marketing and auctioning of the PNC Real Estate Collateral.  The Debtor would be the property owner contracting and selling the PNC Real Estate Collateral at auction;

(c)   As required by the Court's Order entered on December 20, 2013 [Dkt. No. 53] (the "December 20, 2013 Order"), the Debtor is maintaining on a monthly basis an escrow account for property taxes on each PNC property, and is maintaining a segregated bank account into which all rent derived from the properties subject to PNC's lien is deposited and from which the Debtor pays operating expenses associated with the PNC Real Estate Collateral (collectively, the "PNC Escrow Accounts").  The Debtor will provide PNC with statements as to PNC Escrow Account as required by the December 20, 2013 Order;

(d)   Upon the closings of the sales of the PNC Real Estate Collateral, all monies in the PNC Escrow Accounts for the properties being sold will be paid by the Debtor to PNC;

(e)   Upon the Effective Date, Rolling Hills Plaza, LLC shall pay the outstanding ad valorem property taxes in the approximate amount of $11,269.45 for property known as 16 Rolling Hills Road, Cedartown, Georgia out of funds in its PNC Tax Escrow Account, and Edward Byron Slaughter shall pay the outstanding ad valorem

property taxes in the following approximate amounts out of funds in his PNC Tax Escrow Account as follows:

(i) $470.00 for the U.S. Highway 411, Leesburg, Alabama property;

(ii) $1,356.87 for the 2135 Belleview Road, Rockmart, Georgia property;

(iii) $6,718.16 for the 118 Treat Mountain Road, Cedartown, Georgia property; and

(iv) $8,712.32 for the 1029 Judkin Mill Road, Cedartwon, Georgia property;

(f)  In its sole discretion, PNC may directly pay any ad valorem property taxes associated with the PNC Real Estate Collateral.  Any remaining ad valorem property taxes associated with the PNC Real Estate Collateral, and other reasonable and customary closing costs, shall be paid from the Sales Proceeds. All net Sales Proceeds from the sale of the PNC Real Estate Collateral, after payment of property taxes and closing costs, shall be paid to PNC in reduction of its claim amount. To the extent that any net Sales Proceeds remain after PNC's claim is paid in full, then said remaining net Sales Proceeds shall be paid to the Debtor;

(g)  Upon the closings of the sales of the PNC Real Estate Collateral as contemplated herein, the Debtor will be given a credit, either in the amount of the net sales proceeds paid to PNC at closing or as may otherwise be determined by agreement of the parties or Order of the Court, with said credit being deducted from PNC's filed claims to establish a deficiency claim;

(h) PNC's deficiency claim will be allowed and funded as a general unsecured claim in the Slaughter, Apex, and Rolling Hills Plans;

(i) On the 365th day following the Effective Date of the Plan, or such other date as directed by further Order of this Court, the automatic stay of 11 U.S.C. § 362 shall be modified to allow PNC to pursue its state law rights and remedies as to any

7

of the PNC Real Estate Collateral that has not been sold as contemplated herein; and

(j) The Debtor shall continue to insure the PNC Real Estate Collateral, maintain their condition and perform all duties set forth in the December 20, 2013 Order until all of the PNC Real Estate Collateral is either sold at auction or foreclosed upon by PNC as contemplated herein.

Reference is hereby made to the following Court Orders: (i) ORDER REGARDING APPLICATION OF APEX LOCATORS, LLC'S COUNSEL PAUL REECE MARR, P.C. FOR PAYMENT OF INTERIM COMPENSATION entered on September 14, 2015 [Doc. No. 374]; (ii) ORDER REGARDING APPLICATION OF ROLLING HILLS PLAZA, LLC'S COUNSEL PAUL REECE MARR, P.C. FOR PAYMENT OF INTERIM COMPENSATION entered on September 14, 2015 [Doc. No. 371]; and (iii) ORDER REGARDING APPLICATION OF EDWARD BYRON SLAUGHTER'S COUNSEL PAUL REECE MARR, P.C. FOR PAYMENT OF INTERIM COMPENSATION entered on September 14, 2015 [Doc. No. 375] (said Orders are hereinafter referred to as the "Interim Fee Orders"). The Interim Fee Orders provide that neither Apex Locators, LLC, Rolling Hills Plaza, LLC, nor Edward Byron Slaughter (collectively, the "PNC Debtors") may pay to their attorneys any Court approved attorney fees out of the PNC Escrow Accounts absent either further Court Order or consent of PNC. The Plans of the PNC Debtors provide that, if all of the PNC Real Estate Collateral is sold as contemplated under the PNC Debtors' Plans, then to the extent that the PNC Debtors have insufficient funds on hand to pay said Court approved attorney fees, then $10,000 may be paid out of the PNC Escrow Accounts to be applied towards Court approved attorney fees if PNC receives less than $750,000.00 in net sales proceeds at the closings of the sales of the PNC Real Estate Collateral; $20,000.00 may be paid out of the PNC Escrow Accounts to be applied towards Court approved attorney fees if PNC receives more than $750,000.00 but less than $1,000,000.00 in net sales proceeds at the closings of the sales of the PNC Real Estate Collateral as provided herein; and $31,000 may be paid out of the PNC Escrow Accounts to be

8

applied towards Court approved attorney fees if PNC receives $1,000,000.00 or more in net sales proceeds at the closings of the sales of the PNC Real Estate Collateral as contemplated herein. No funds shall be paid out of the PNC Escrow Accounts to the Debtors' attorney unless all of the PNC Real Estate Collateral is sold as contemplated herein.

2. Class 8 appearing in Article IV, pages 11 and 12 of the *First Amended Plan of Reorganization* is hereby amended by inserting the following paragraph as the first (1st) paragraph to appear on page 12 of the *First Amended Plan of Reorganization*:

> Greater Rome Bank (now doing business as Greater Community Bank) filed Proof of Claim number 4-1 on December 31, 2013 asserting a general unsecured claim in the amount of $46,791.27;

IT IS FURTHER ORDERED that the Plan is CONFIRMED. To the extent that there may be a conflict between the terms of the Plan and the terms of this Order, then the terms of this Order shall control;

IT IS FURTHER ORDERED that all fees required to be paid by the Debtor pursuant to 28 U.S.C. §1930(a)(6) will accrue and be timely paid as and when the same may come due; and

IT IS FURTHER ORDERED that notwithstanding any language in the confirmed Plan to the contrary, this Court will retain only such jurisdiction in this case as it is required to retain under the Bankruptcy Code and Rules.

IT IS FURTHER ORDERED that within 120 days from the entry of this Order, the Debtor shall file a report stating whether the estate has been fully administered within the meaning of Bankruptcy Rule 3022 and setting forth a list of all fees and expenses paid to all professionals including attorneys for the Debtor, together with an application for a final decree closing

the case.

END OF DOCUMENT

| | |
|---|---|
| Prepared and submitted by,<br>PAUL REECE MARR, P.C.<br>Attorneys for the Debtor | No opposition by:<br>GUY G. GEBHARDT<br>ACTING U. S. TRUSTEE,<br>REGION 21 |
| /s/ Paul Reece Marr<br>Paul Reece Marr<br>GA Bar # 471230<br>300 Galleria Pkwy; #960<br>Atlanta, Georgia 30339<br>(770) 984-2255<br>paul@paulmarr.com | /S/ Martin P. Ochs<br>MARTIN P. OCHS<br>NY Bar No. MO-1203<br>GA Bar No. 091608<br>U. S. Department of Justice<br>Office of the U. S. Trustee<br>362 Richard B. Russell Bldg.<br>75 Spring Street, S.W.<br>Atlanta, Georgia 30303<br>(404) 331-4437<br>martin.p.ochs@usdoj.gov |
| Consented to by:<br>THE AGEE LAW FIRM<br>Attorneys for Greater<br>Community Bank fdba<br>Greater Rome Bank | Consented to by:<br>BAKER, DONELSON, BEARMAN,<br>CALDWELL & BERKOWITZ, PC<br>Attorneys for PNC Bank,<br>National Association |
| /s/ Wendell S. Agee<br>Wendell S. Agee<br>Georgia Bar No. 005558<br>P.O. Box 2374<br>Buford, Georgia 30515-2374<br>(678) 986-0325<br>wsa2law@yahoo.com | /s/ Ron C. Bingham<br>Ron C. Bingham, II<br>Georgia Bar No. 057240<br>3414 Peachtree Road, NE<br>Atlanta, Georgia 30326<br>(404) 443-6721<br>rbingham@bakerdonelson.com |

DISTRIBUTION LIST

Pursuant to Local Rule 9013-3 for the United States Bankruptcy Court, Northern District of Georgia, following is a list of all parties to be served with a copy of this Order:

Martin P. Ochs
Office of the U. S. Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Paul Reece Marr
Paul Reece Marr, P.C.
300 Galleria Parkway, N.W.
Suite 960
Atlanta, GA 30339

The Agee Law Firm
Wendell S. Agee
P.O. Box 2374
Buford, Georgia 30515-2374

Ron C. Bingham, II
Baker, Donelson, Bearman,
Caldwell & Berkowitz, PC
Monarch Plaza, Suite 1600
3414 Peachtree Road, N.E.
Atlanta, Georgia   30326

G. Phillip Beggs
Moore Ingram
Johnson & Steele, LLP
Emerson Overlook
326 Roswell Street
Marietta, GA 30060

David W. Cranshaw
Morris, Manning
& Martin, L.L.P.
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326

Jed L. Frankel
Eisinger, Brown, et al
Presidential Circle
Suite 265 South
4000 Hollywood Blvd.
Hollywod, FL 33021

A. Michelle Hart Ippoliti
McCalla Raymer, et al
1544 Old Alabama Road
Roswell, GA 30076

Peoples Independent Bank
c/o David L Jones
Jones and Milwee, LLC
P. O. Box 940
Guntersville, AL 35976

Martha A. Miller
Schulten Ward & Turner, LLP
Suite 2700
260 Peachtree Street, NW
Atlanta, GA 30303-1240

Garrett H. Nye
Cohen Pollock
Merlin & Small, P.C.
Suite 1600
3350 Riverwood Parkway
Atlanta, GA 30339

J. Andrew Owens
Magruder and Sumner
P.O. Box 5187
Rome, GA 30162-5187

Thomas D. Richardson
Brinson, Askew, Berry, et al
P. O. Box 5007
Rome, GA 30162-5007

Howard D. Rothbloom
The Rothbloom Law Firm
31 Atlanta Street
Marietta, GA 30060

John D. Schlotter
Aldridge Connors LLP
Fifteen Piedmont Center -
Suite 500
3575 Piedmont Rd., NE
Atlanta, GA 30305

Kelly E. Waits
Burr & Forman, LLP
Suite 1100
171 17th Street, NW
Atlanta, GA 30363

Brian Richard Bojo
McRae Stegall Peek Harman
Smith & Mannin
100 East Second Avenue
PO Box 29
Rome, GA 30162

Jonathan T. Edwards
Alston & Bird, LLP
1201 W. Peachtree St.
Atlanta, GA 30309

Ira L. Rachelson
Rachelson & White, PC
Suite 1875
Three Ravinia Drive
Atlanta, GA 30346

Kimberly D. Rayborn
McCalla Raymer, LLC
1544 Old Alabama Road
Roswell, GA 30076

John A. Christy
Schreeder, Wheeler
& Flint, LLP
1100 Peachtree Street
Suite 800
Atlanta, GA 30309-4516